**Alfredo Ramirez GARCIA, Appellant,**

**v.**

**Herbert BROWNELL, Attorney General of the United States, and Albert Del Guercio, Officer in Charge Immigration & Naturalization Service at Los Angeles, California, Appellees.**

**No. 14905.**

United States Court of Appeals
Ninth Circuit.

Aug. 6, 1956.

David C. Marcus, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, James R. Dooley, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, BONE, Circuit Judge, and TOLIN, District Judge.

TOLIN, District Judge.

Appellant seeks reversal of an Order of Dismissal entered in the District Court. In that Court he had filed a Petition for Declaratory Judgment and for Determination of United States Citizenship.

The Petition alleged that jurisdiction was invoked pursuant to Section 360(a) of Public Law 414,[1] Section 2201, Title 28 U.S.C.A.[2]

In his brief appellant contends that jurisdiction arises under Section 503 of the Nationality Act of 1940. That statute has been superseded by the Nationality Act of 1952, but it has been judicially declared that where one was excluded from admission to the United States prior to the repeal of Section 503 of the Nationality Act of 1940, his right to have his citizenship judicially determined was preserved by the savings clause contained in the Immigration and Nationality Act of 1952. In that case[3] plaintiff was excluded and remained outside this Nation pending determination of the litigation.

Garcia's petition does not state a claim upon which relief can be granted, and this was the only basis for dismissal recited in the Order of Dismissal.

Both statutes relied upon by petitioner are in their nature declaratory relief laws. It has always been, and now is, essential to the maintenance of a declaratory relief action that there be an actual controversy in existence.

Unless an actual controversy exists, the District Court is without pow-

1. Section 360(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1503(a).

2. Federal Declaratory Judgment Act.

3. Wong Kay Suey v. Brownell, 97 U.S. App.D.C. 26, 227 F.2d 41.

Section 405(a) of the Immigration and Nationality Act, 66 Stat. 280, 8 U.S.C.A. § 1101 note.

er to grant declaratory relief.[4] Mere possibility, even probability, that a person may in the future be adversely affected by official acts not yet threatened does not create an "actual controversy" which is a prerequisite created by the clear language of the statute if it be sought to maintain an action under Section 2201, Title 28 U.S.C.A. Neither does it create a denial of a right or privilege as a National of the United States which is a condition for bringing the action under Section 503 of the Nationality Act of 1940. Both statutes require an actual, presently existing controversy, the declaratory judgment law by its express language and the Nationality Act of 1940 by the *denial* of a right or privilege.

If there be such a dispute, there is a justiciable controversy and this rule has been applied in a case wherein a citizen had applied for a passport which had been denied her upon a theory that she was an alien.[5]

Such a controversy once existed between appellant and appellees. It has long ago been resolved insofar as that particular dispute and the claimed denial of a citizen's right are concerned.

The petition alleges that Garcia was born at Gardena, California and that he is now, and ever since his birth has been, a constitutional citizen of the United States. He further alleged that at the age of seven years he was taken to Mexico. There follow allegations of re-entries into the United States and journeys to Mexico. There were occasional disputes between the parties in this history, but they were all resolved.

Finally in February 1951, petitioner journeyed to Mexico and when he sought to return five days later, he was denied permission to enter the United States as a native-born citizen.

Thereafter the occurrence took place which robs the situation of present justiciability.

According to the petition:

"Your petitioner returned to said port of entry at San Ysidro, California and entered the United States on or about September 21, 1951, and ever since said time has lived and resided in the United States."

There is no allegation that his rights in this regard were disputed by any official, or that any effort has been made or threatened to oust him from his residence in this Nation. Either there was a different official determination at the border on or about September 21, 1951, than there had been in February, or the former dispute was not revived.

█ Petitioner did not allege, nor can this Court presume that the entry was unlawful, for disobedience of law is not presumed.

The right of a citizen which petitioner sought to have recognized at the port of entry, was a right to enter the United States. Although he has pleaded that a Board of Special Inquiry of the Immigration and Naturalization Service then denied him permission to enter the United States, he continued his petition with an allegation that at a later date he entered and remained in this Nation. Residence has been undisturbed since September 21, 1951. There is no allegation of a challenge to any right of a citizen since the ruling of the Board of Special Inquiry. The controversy abated by peaceful entry subsequent to that ruling. No right of a citizen is now being denied appellant. The element of actual controversy necessary to ground his petition is absent.

Petitioner's pleading that respondents "contend that petitioner is not a national of the United States", followed by an allegation that they contend petitioner had departed and remained out of the United States for the purpose of evading and avoiding military service in time of war is not sufficient in itself to state the kind

---

4. Commercial Stand. Ins. Co. v. Gilmore, Gardner & Kirk Oil Co., 10 Cir., 157 F. 2d 929; Samuel Goldwyn, Inc., v. United Artists Corporation, 3 Cir., 113 F.2d 703; Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617.

5. Perkins v. Elg, 69 App.D.C. 175, 99 F. 2d 408. See also, Podea v. Acheson, 2 Cir., 179 F.2d 306.

of controversy which will invoke the declaratory judgment process of the Court. These allegations are general in terms and are made on petitioner's "information and belief". There is not any allegation that respondents have threatened or attempted to act upon such a belief or even declared it since the September 21, 1951 denial of entry which has been overcome by actual entry and undisturbed residence.

If respondents seriously contended that petitioner had expatriated himself, it would be inconsistent that they would have relaxed their attitude at the border so that petitioner succeeded in his return to the United States; or if that entry has been without the consent of respondents, then if respondents seriously asserted the contention petitioner believes they harbor, it would be expected that there would be a deportation proceeding either actually under way or an intention to deport declared. In the absence of more specific allegations, the pleading that "petitioner is informed and believes" that such a state of mind exists, does not supply the element of actual controversy particularly in the face of petitioner's definite assertion that he has re-entered the United States and resided here for a period of years. The pleading as to the incidents of that residence is barren of any allegation that it was impeded by respondents, or that they have even threatened to hereafter burden it with any positive action upon what petitioner believes their attitude to be.

This Court has said [6] in a similar action for declaratory relief:

"The gist of the claim of petitioner is that he is being deprived of citizenship without due process, but no 'facts' are alleged which give even a shadow of basis for such a claim.

The adjudication of alleged constitutional rights in a declaratory judgment action is not to be encouraged for the reason that decisions in that field tend to be advisory unless based upon proof of definite and specific fact.

"Finally, the allowance of a petition for declaratory relief is discretionary with the trial court. There was no abuse of discretion in dismissing the petition even if the jurisdictional grounds were present.

"In the event that the Attorney General should take any action which might tend to violate the rights of petitioner, there will be time for the latter to protect himself by a petition for writ of habeas corpus or by other appropriate proceedings."

This follows a line of Supreme Court Decisions.[7] Chief Justice Hughes stated:[8]

" * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * "

More recently the Supreme Court declared:[9]

"A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest. [Citations.] It is always the duty of a court of equity to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief. *Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative.*" (Emphasis supplied.)

▇ Continuing apprehension of appellant that some right might be violated,

---

6. Fletes-Mora v. Brownell, 9 Cir., 231 F. 2d 579, 581.

7. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 324, 56 S. Ct. 466, 80 L.Ed. 688; Great Atlantic &

Pac. Tea Co. v. Grosjean, 301 U.S. 412, 57 S.Ct. 772, 81 L.Ed. 1193.

8. Aetna Life Ins. Co. v. Haworth, 1937, 300 U.S. 227, 57 S.Ct. 461, 464, 81 L.Ed. 617.

9. Eccles v. Peoples Bank, 1948, 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784.

is not synonymous with continued existence of the controversy which arose in connection with the exclusion proceedings. That controversy was ended when petitioner entered the United States where he has now resided and been physically present since September 21, 1951.

*Dismissal of the petition is affirmed.*

DENMAN, Chief Judge (dissenting).

The court's opinion dismissing Garcia's petition ignores entirely the affidavit of the Immigration officer now in charge of entry into the United States of persons from Tiajuana on the Mexico border line of California through San Ysidro in California. The controversy concerns visits by Garcia, residing in California, to his relatives in this border town of Tiajuana.

Since the Attorney General moves to dismiss and offers Del Guercio's affidavit which states facts *supporting* the petition, the allegations of the petition must be taken as true and the right to dismiss based upon them and the support of the affidavit.

This affidavit discloses an existing controversy in 1951. We are all agreed that if it existed then it exists now. The affidavit at great length describes the proceedings under which Garcia was first excluded, in which the Board of Special Inquiry found that Garcia is not a citizen of the United States, which decision was affirmed by the Commissioner and his decision in turn affirmed on March 31, 1947 by the Board of Immigration Appeals.

It is obvious that there is no reason for the long recital in Del Guercio's affidavit of the 1947 procedure and decision of the Immigration authorities that Garcia is not an American citizen, unless that decision still controls them. It is the reason given for refusing to admit Garcia on September 20, 1951. Telling him to come again the next day is an utterly unwarranted delay to an American citizen and he was entitled to walk into his own country without waiting for the convenience of the Service as he did on September 21, 1951. *It is apparent that if the Immigration authorities now do not contend that Garcia is not an American citizen, they would have admitted it and moved for dismissal on that ground instead of filing Del Guercio's affidavit.*

The allegations of Garcia's petition which must be taken as true show that in March 1951 Garcia had applied for admission into his country and it was refused by the Immigration authorities as it had been in 1947, and states as the ground of the 1951 refusal that the officers of the Immigration and Naturalization Service "contend [present tense] that the petitioner is not a citizen of the United States."

Certainly here in September 1951 there is an existing controversy between Garcia and the Immigration Service. It is none the less so because Garcia states he is informed and believes that the *reason* for Service's *contention* that he is not a citizen is its contention that he departed from the United States to evade military service. The court errs when it holds that because Garcia states on information and belief the *reason* for the petition's straight allegation that the Service is contending he is not a citizen, he has not stated a cause of action. How otherwise could he allege the *reason* for the *unqualified* allegation that officers of the Service "contend" he is not an American citizen?

In this situation it is an outrage on Garcia, when desiring to visit his relatives just across the line in Tiajuana, to say to him, "Of course you may go. If on your return Service refuses you admission to your country as it has twice before, all you have to do is get your body in the custody of some federal official and, from your imprisonment, apply for a writ of habeas corpus and after months of incarceration the Supreme Court may decide the question now before us and order you released."