**WESTFIELD PARTNERS, LTD., an Illinois Corporation, Plaintiff,**

v.

**Richard C. HOGAN, Jeanne D. Hogan, Shelly Latoria, Joseph Latoria, Shawn Sterne, Juli Sterne, Peter Sorensen, Nancy Sorensen, Dennis Bomberek, and Vicki Bomberek, Defendants.**

No. 90 C 137.

United States District Court,
N.D. Illinois, E.D.

June 19, 1990.

Donald F. Hemmesch, Jr., Taslitz, Smith & Hemmesch, Kevin P. Burke, Chicago, Ill., for plaintiff.

Joseph M. Williams, Law Offices of Joseph M. Williams, St. Charles, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is the motion of defendants, Richard C. Hogan, Jeanne D. Hogan, Shelly Latoria, Joseph Latoria, Shawn Sterne, Juli Sterne, Peter Sorensen, Nancy Sorensen, Dennis Bomberek, and Vicki Bomberek, to dismiss plaintiff's complaint. For the following reasons, defendants' motion is granted.

■ On a motion to dismiss, the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Doe v. St. Joseph's Hospital,* 788 F.2d 411 (7th Cir.1986). The plaintiff need not set out in detail the facts upon which the claim is based, but must

allege sufficient facts to outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus*, 603 F.2d 1266 (7th Cir.1979). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transport Services, Inc.*, 795 F.2d 591, 594 (7th Cir.1986).

## FACTS

Accordingly, the pertinent facts are as follows. The plaintiff, Westfield Partners, Ltd. ("Westfield"), is an Illinois corporation engaged in the business of real estate development. Westfield purchased three parcels of land in Wayne Township, DuPage County, Illinois, which it hoped to develop into an upscale single family home subdivision named "Tall Oaks Estates". The preliminary plat provided ingress and egress to the subdivision via a road running between Fair Oaks Road to the west and Woodcreek Lane North to the east.

All defendants live on Woodcreek Lane North. The defendants oppose the use of the proposed roadway to access Tall Oaks Estates. The defendants filed a Petition to Vacate Woodcreek Lane North as a public roadway, pursuant to Ill.Rev.Stat. ch. 121 ¶ 6–303. Vacation of the road would interfere with approval Tall Oaks Estates subdivision by the Village of Carol Stream and inhibit prices for individual subdivided lots. A public hearing was scheduled and notification of the hearing was provided by publication[1]. A hearing on the issue was held on August 18, 1989 and attended by the defendants, but not by plaintiff. On August 21, 1989, the Wayne Township Highway Commissioner filed with the Wayne Township Clerk his Memorandum of Decision to vacate Woodcreek Lane North as a public roadway. The Plat of Vacation was filed by the Wayne County Highway Commissioner in the office of the DuPage County Recorder of Deeds on August 28, 1989.

Plaintiff, aggrieved by the Highway Commissioner's decision, filed the instant suit against the homeowners who had petitioned for the vacation. Plaintiff's complaint seeks relief in four counts. Count one, the only basis for federal jurisdiction, alleges that defendants conspired with Wayne Township officials[2] to deprive plaintiff of its right to develop the property without due process of law, in violation of 42 U.S.C. § 1983. Count two alleges that the defendants, along with Wayne County officials, intentionally vacated Woodcreek Lane North as a public roadway, knowing it would impair plaintiff's ability to develop Tall Oaks Estates, thereby interfering with plaintiff's prospective economic advantage. Count three claims that defendants have slandered the title of plaintiff's real estate. Count four seeks a declaratory judgment that the Plat of Vacation of Woodcreek Lane North is void. Westfield seeks compensatory damages in the amount of three million dollars and punitive damages in the amount of one million dollars against the homeowner-defendants.

## DISCUSSION

At an initial court appearance by both counsel, the court, citing *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461 (7th Cir.1988), inquired as to the propriety of filing this action in a federal forum. As noted in *Coniston*, as well as the more recent case of *Northside Sanitary Landfill, Inc. v. City of Indianapolis, et. al.*, 902 F.2d 521 (7th Cir.1990), the federal court is not a Board of Zoning Appeals. Despite this admonition, developers who are disappointed with local land use decisions persist in seeking federal avenues to receive favorable decisions. The court perceives this, with a great deal of alarm, as part of a growing trend of what have come

---

1. By statute, publication in a newspaper was all the notice to which the plaintiff was entitled. Ill.Rev.Stat. ch. 121 ¶ 6–305.

2. The court notes that none of the Wayne Township officials alleged in the complaint to have been co-conspirators have been actually named as defendants.

to be known as "SLAPP suits"[3]. The term "SLAPP" is an acronym for the phrase "strategic lawsuits against public participation". A SLAPP suit is one filed by developers, unhappy with public protest over a proposed development, filed against leading critics in order to silence criticism of the proposed development[4]. The filing of such suits has seen increasing use over the past decade[5]. Examination of the facts and allegations in plaintiff's complaint compel this court to view the underlying purpose of this suit with a great deal of skepticism.

The court grants defendant's motion to dismiss count one on two grounds; 1) that defendant's Petition to Vacate, submitted to Wayne Township Highway officials, is absolutely privileged under the first amendment, and, in the alternative, 2) that plaintiff's complaint, on its face, fails to show that defendant's actions were taken "under color of state law" as is required by 42 U.S.C. § 1983.

■ As to the first ground, the court holds that defendants' petitioning of Wayne Township officials is absolutely privileged under the first amendment, and defendants cannot incur § 1983 liability for those actions. Plaintiff's entire complaint against defendants is based upon nothing more than defendants' exercise of their right, under the first amendment, to petition the government for a redress of grievances[6].

The basis for the court's decision finds its genesis in what has come to be known as the *Noerr-Pennington* doctrine. The doctrine is based upon two Supreme Court decisions, *Eastern Rail Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers v. Pennington,* 381

U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

The *Noerr* case involved a dispute between a group of railroads and a group of trucking companies for primary control of the nation's long distance heavy freight hauling business. The railroads had engaged in an advertising campaign designed to curtail the use of trucks for long distance hauling, and most notably had persuaded the Governor of Pennsylvania to veto the "Fair Truck Bill" in his state. 365 U.S. at 129–31, 81 S.Ct. at 525–26. The trucking companies filed suit against the railroads, alleging violations of the Sherman Act, §§ 1 and 2[7]. *Id.* The Supreme Court rejected the trucker's claims and held that the Sherman Act could not be violated by attempts to solicit government action in respect to the passage and enforcement of laws. 365 U.S. at 138, 81 S.Ct. at 530. The Court stated:

> In a representative democracy such as this, these branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives.

365 U.S. at 137, 81 S.Ct. at 529.

Five years later, the Court decided the *Pennington* case. There, a union representing coal workers successfully petitioned the Secretary of Labor for an increase in the minimum wage paid to coal miners. This had the consequence of forcing smaller coal companies out of business. Again, the Court held that "joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition." 381 U.S. at 670, 85 S.Ct. at 1593.

---

3. The term "SLAPP suit" was coined by two University of Denver law professors, Penelope Canan and George W. Pring.

4. Galperin, *Getting SLAPPed,* The Los Angeles Times, April 29, 1990, Real Estate Section, p. 1, col. 4.

5. Dellios, *Builder's Suit Puts Clamp On Picketing Homeowners,* Chicago Tribune, DuPage Sports Final Edition, April 4, 1990, p. 1.

6. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S.CONST. amend. I.

7. 15 U.S.C. §§ 1, 2.

As it has been developed, the *Noerr–Pennington* doctrine creates an immunity from suit which allows citizens and companies to petition public officials to take certain actions or enact certain provisions. *See Campbell v. City of Chicago*, 639 F.Supp. 1501, 1509 (N.D.Ill.1986) (Norgle, J.), *aff'd*, 823 F.2d 1182 (7th Cir.1987). As noted by this court, "*Noerr–Pennington* is rooted in the first amendment right to petition government, and 'genuine efforts to induce government to take such lawful action are beyond the Sherman Act.'" *Campbell*, 639 F.Supp. at 1509 (citing *Metro Cable Co. v. CATV of Rockford, Inc.*, 516 F.2d 220, 224 (7th Cir. 1975)).

The application of the *Noerr–Pennington* doctrine has been applied outside the narrow confines of antitrust suits and has been used to protect citizen's communications with the government in a wide variety of cases. Most notably, it has been applied to shield citizens from liability for petitions to a zoning board under § 1983—conduct similar to that engaged in by defendants in this action. In *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607 (8th Cir.1980), a developer sought to impose liability, under § 1983, on a group of citizens for an alleged conspiracy with city officials to prevent the construction of plaintiff's building. *Gorman*, 626 F.2d at 614. The Eighth Circuit, noting that the concept of the *Noerr–Pennington* doctrine had been applied to hold individuals immune from suit

in a number of different actions[8], held that the private citizens were absolutely privileged, by the first amendment, to petition for the zoning amendment which caused that plaintiff's damages. *Id.* The facts alleged in plaintiff's complaint show that the actions of the defendants in petitioning Wayne Township officials for vacation of Woodcreek Lane North as a public road fit squarely into the privilege making citizens immune from suit when petitioning the government to take certain actions. Plaintiff's own complaint shows that the defendants petitioned township officials pursuant to a valid Illinois statute[9]. Complaint, exhibit A, Memorandum of Decision of Wayne Township Highway Commissioner. Notice of a hearing on the issue was published in the newspaper. Complaint, p. 4, par. 10. The hearing was held and the Wayne Township Highway Commissioner duly filed his Memorandum of Decision. *Id.* Plaintiff's allegations of "conspiracy" amount to nothing more than the wholly lawful exercise, by citizens in a community, of the right to petition their local government to follow a certain course of action[10]. The exercise of this right should be vigorously protected and should not expose individuals to suit by persons unhappy with the results of such petitioning. This court holds that the defendants in this action are immune from § 1983 liability for actions taken in petitioning Wayne Township officials to vacate Woodcreek Lane North as a public roadway. Accordingly, defendant's motion to dismiss count one is granted.

**8.** *See Reichenberger v. Pritchard*, 660 F.2d 280, 288 (7th Cir.1981)(stating, in *dicta*, that an individual's right to petition the government is absolutely privileged from attack under the civil rights act); *Shape of Things to Come, Inc. v. County of Kane*, 588 F.Supp. 1192 (N.D.Ill.1984) (individual's formation of civil action group to lobby against zoning permit immune from suit under § 1983); *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342–46 (7th Cir.1977) (complaints to government are privileged from suit under 42 U.S.C. § 1985(1)); *Sawmill Products, Inc. v. Town of Cicero*, 477 F.Supp. 636, 642 (N.D.Ill.1979) (individual's protests to town against presence of sawmill held immune from suit under § 1983); *Weiss v. Willow Tree Civic Assoc.*, 467 F.Supp. 803, 816–18 (S.D.N.Y.1979) (lobbying of town officials immune from suit under § 1983); *Aknin v. Phillips*, 404 F.Supp.

1150 (S.D.N.Y.1975) (individual's petitioning of city officials to enforce noise ordinances privileged from § 1983 action).

**9.** The petition to vacate was submitted pursuant to Ill.Rev.Stat. ch. 121 ¶ 6–303.

**10.** The court notes that there is an exception to *Noerr–Pennington* immunity, the "sham" exception. This exception applies when it can be shown that an ostensible campaign to petition the government is actually a cover for nothing more than an attempt to harass (ie. repeated baseless or repetitive claims). *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Nothing in this case even remotely suggests that defendants actions are such as to bring them within the sham exception.

■ Even if this court were not to apply a first amendment based immunity to the actions of defendants here, count one of plaintiff's complaint would still be dismissed for a fundamental flaw—it fails to sufficiently allege that defendants have acted under color of state law. 42 U.S.C. § 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ...

The requirement of action under color of state law is essential in order to state a claim under § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Robinson v. Bergstrom*, 579 F.2d 401, 404 (7th Cir.1978). In this action, defendants are not state officials, but private citizens. The acts of private citizens, no matter how discriminatory, are not prohibited under § 1983. *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir.1989); *Ouzts v. Maryland National Insurance Co.*, 505 F.2d 547, 550 (9th Cir.1974). Therefore, plaintiff's complaint must allege that these private citizens somehow acted under color of state law.

The alleged basis for state action in plaintiff's complaint is a conspiracy between defendants and Wayne Township officials. Private parties have been found to have acted under color of state law when involved in a conspiracy with state officials. *Adickes*, 398 U.S. at 152, 90 S.Ct. at 1605–06; *Moore v. Marketplace Restaurants, Inc.*, 754 F.2d 1336, 1352 (7th Cir.1985). However, bald allegations of conspiracy are not sufficient to state a claim; the plaintiff must support the allegation with specific facts. *Moore*, 754 F.2d at 1352–53; *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1208 (7th Cir.1980). In order to establish a conspiracy, the plaintiff must allege facts demonstrating that state officials and private parties somehow reached an understanding to deny the plaintiff its constitutional rights. *Moore*, 754 F.2d at 1352.

An examination of the complaint fails to turn up any specific facts supporting plaintiff's allegation of a conspiracy between the defendants and Wayne County officials. Although plaintiff does alleges that the defendants conspired with Wayne Township officials to thwart the development of Tall Oaks Estates, Complaint, p. 3, par. 8, such allegation is nothing more than a conclusory allegation, wholly unsupported by specific facts. As plaintiff has failed to sufficiently allege a conspiracy between the defendants and state officials, it fails to allege that defendants acted under color of state law. Defendant's motion to dismiss count one for failure to state a claim is granted.

■ Left before the court, therefore, are the state causes of action. Since the plaintiff's basis for a federal forum has been dismissed, the court also dismisses counts two through four, plaintiff's pendant state claims. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Manor Healthcare Corp. v. Guzzo*, 894 F.2d 919, 922 (7th Cir.1990); *Gorman*, 626 F.2d at 616 ("Where the federal element which is the basis for jurisdiction is disposed of early in the case, as on the pleadings, it smacks of the tail wagging the dog to continue with a federal hearing of the state claim." (citing *McFaddin Express, Inc. v. Adley Corp.*, 346 F.2d 424, 427 (2nd Cir.1965)). Accordingly, the court grants defendant's motion to dismiss plaintiff's complaint in its entirety.

IT IS SO ORDERED.