**GOVERNMENT OF THE VIRGIN ISLANDS, Appellant**

**v.**

**19.623 ACRES OF LAND, ETC.**

No. 76-1452

United States Court of Appeals

Third Circuit

Argued April 29, 1976

Filed May 26, 1976

WILLIAM L. NEFF, ESQ., Deputy Assistant Attorney General, St. Thomas, V.I., *for appellant*

JOHN D. MERWIN, ESQ. (MERWIN, ALEXANDER & O'BRIEN), Frederiksted, St. Croix, V.I., *for appellee*

Before VAN DUSEN, ADAMS, and ROSENN, *Circuit* Judges

### OPINION OF THE COURT

ADAMS, *Circuit Judge*

In this appeal, the Government of the Virgin Islands challenges the ruling of the district court that held improper the attempted condemnation of certain St. Croix properties for highway purposes.

### A.

As a preliminary step in its efforts to extend the Cross-Island Highway, which is planned to go from Christiansted to Frederiksted on the island of St. Croix, the Government of the Virgin Islands filed a condemnation complaint

in June 1975.[1] The government hoped to acquire several enumerated properties pursuant to its complaint, through the exercise of the power of eminent domain. In their answers, the owners of the parcels of land objected to the taking for three reasons: the price offered by the government was inadequate; the route chosen for the portion of the highway involved in this case was such that the value of the land for its pre-existing farming purposes would be destroyed; and alternative routing of the highway would result in less damage to the utility of the property sought to be condemned.

Although the contention was not set forth in the answers to the condemnation complaint, the landowners also argued in the district court that the condemnation was improper because they had never received notice of the hearings that were held to assess public reaction to the proposed route.[2]

The district court ruled that the condemnation proceedings were invalid, and therefore of no effect.[3] It rested its decision on two propositions. The first ground was that the failure of the government to give each landowner personal notice of the public hearings, prior to depriving him of his property, violates the due process clause of the federal constitution. Specifically, the district court held that once the government decides that a hearing will be held to air public views regarding a particular proposal for a public project, it must give personal notice of the hearing to those individ-

---

[1] See Fed. R. Civ. P. 71A(c).

[2] This defense was raised in opposition to the government's motion for judgment on the pleadings. See Fed. R. Civ. P. 12(h)(2). The district court treated the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

[3] In view of the posture of the case and of the district court's holding, it was unnecessary for the district court to address the landowners' objection that the price which the government offered to pay for the land was too low.

The district court rejected the claims regarding the routing of this portion of the highway—that the route chosen destroyed property values unnecessarily, and that a different route would do less harm to those property values.

uals whose properties are scheduled to be condemned for inclusion in the project.[4]

As its second reason for invalidating the condemnation, the district court, reaching the question sua sponte, ruled that the government did not have the requisite legislative authorization to condemn land for the Cross-Island Highway. Reading the statutes that provide the Government of the Virgin Islands with general authority to condemn land for public purposes[5] to require further legislation authorizing a particular project, the court found such legislation lacking.[6] The district court therefore held that the land in question had been condemned without authority, and that the condemnation was a "nullity."

In its appeal from the trial court's ruling, the government asserts that property owners have no due process right to a hearing regarding the necessity of condemning their land, and thus no right to be notified of a hearing should one be held. Further, the government urges that the property owners waived their right to claim that the condemnation was not legislatively authorized, and that the trial judge had no discretion to raise a defense so waived. In any event, the government states, the condemnation was legislatively authorized. Controverting the government's contentions, the landowners maintain that the district court's decision was correct in all respects, and should be affirmed.

For the reasons set forth below, we vacate and remand to the district court.

## B.

If either of the bases relied upon by the district court was sufficient for reaching its conclusion, the judgment

---

[4] Notice by publication in a St. Croix newspaper was thus found to be inadequate.

[5] 28 V.I.C. §§ 411, 413 (1967).

[6] Nor did it find authorization in the other statute relied upon by the government. No. 3242, Act of July 10, 1972, Ninth Legislature of the Virgin Islands, 1972 Regular Session.

must be affirmed. We first address the question whether there existed sufficient legislative authorization for the condemnation, since, if there was not, the constitutional issue posed by the parties need not be reached.[7]

In its condemnation complaint, the government averred that "[t]he authority for the taking is Act No. 3242, Ninth Legislature of the Virgin Islands, 1972, Regular Session, and 28 V.I.C. §§ 411 and 413."[8] In its brief filed in this Court, the government additionally asserts that authority for the condemnation existed by virtue of 20 V.I.C. § 3[9] and 20 V.I.C. §§ 41 and 43.[10]

---

[7] Hagans v. Lavine, 415 U.S. 528, 543 (1974); Allen v. Aytch, No. 75-1924 (3d Cir., April 29, 1976), slip op. at 6.

[8] This allegation was also contained in the amended complaint, filed approximately 10 weeks after the original complaint.

Act No. 3242 is an appropriation act that does not expressly mention the Cross-Island Highway, although it does include a list of several roads for which various appropriations were made.

The relevant portions of 28 V.I.C. § 411 provide:

Subject to the provisions of this chapter, the right of eminent domain may be exercised in behalf of the following public uses:

(1) All public uses authorized by Congress or the Legislature of the Virgin Islands.

\* \* \*

(3) Public buildings and grounds for the use of any town, village, school district, or other governmental division, whether incorporated or unincorporated; canals, aqueducts, flumes, ditches, or pipes conducting water, heat, or gas for the use of the inhabitants of any town, or other governmental division, whether incorporated or unincorporated, roads, streets, and alleys, and all other public uses for the benefit of any town, or other governmental division, whether incorporated or unincorporated, or the inhabitants thereof, which may be authorized by Congress or the Legislature of the Virgin Islands.

Section 413 simply lists which private property (e.g., real property belonging to any person) may be taken in a condemnation proceeding if the taking is otherwise justified.

[9] The statute provides:

(a) When the construction of a new highway or the increase in width of an existing highway is authorized, the Commissioner of Public Works may accept, on behalf of the government of the Virgin Islands, deeds of gift from the owners of property affected thereby. If the interest of the public can be adequately served by the acquisition of easements, the Commissioner of Public Works may accept such easements on behalf of the government of the Virgin Islands.

(b) If the necessary property can not be acquired under subsection (a) of this section, the right of eminent domain shall be exercised.

[10] These sections state:

§ 41.

It is declared that the establishment of a long-range comprehensive program for construction and improvement of roads and highways throughout the Virgin Islands is essential to the internal development of

As an alternative position, the government claims that the landowners waived any objections bottomed upon the absence of legislative authorization by failing to raise such objections in their answers. This argument is predicated upon the language of Rule 71A(e) of the Federal Rules of Civil Procedure, which provides that "[t]he answer shall . . . state all [the landowner's] objections and defenses to the taking of his property. A defendant waives all defenses and objections not so presented . . . ." The government further maintains that the district court had no discretion to raise the question sua sponte, as it did, since the objection had been waived by the landowners.

■ It is true, first, that the landowners did not state in their answers that no legislative authorization for the takings existed. That defense was thus waived, under the clear mandate of Rule 71A(e). The matter thus reduces to whether the district court, in the circumstances of this case, had power to address the issue, in view of the defendants' waiver.

One of the major purposes of Rule 71A is to simplify condemnation proceedings so that the rights of the parties may be determined promptly and with assurance.[11] Although those interests are important ones in most litigation, they are especially substantial in the condemnation area, where the right of the government to proceed with

the Virgin Islands, and the works authorized under this chapter are declared essential public projects; the Governor of the Virgin Islands is authorized and directed to undertake the same in accordance with the terms and provisions of this chapter.

§ 43.

In addition to the initial report provided for in section 42 of this title, the Governor shall also submit at the commencement of each regular session of the Legislature, a plan for specific projects to be undertaken consistent with the long-range road highway program, together with a report on accomplishments under the program in preceding years, as well as such recommendations relating to the further implementation, extension or modification of the same as he may consider appropriate.

[11] United States v. 3,065.94 Acres of Land, 187 F.Supp. 728, 732 (S.D. Cal. 1960); 12 C. Wright & Miller, Federal Practice and Procedure § 3041, at 91 (1973).

construction projects, often of major proportion and always devoted to public use, is paramount.

The primacy of these factors where condemnation is concerned is reflected by the structure of Rule 71A. The rule contemplates a two-step procedure. In the first, the government announces what land it needs, and the landowners are given a full opportunity to present, in their answers, objections or defenses they have to the taking. Any defenses so raised are ruled upon by the court. But in the interest of promptness, no preliminary motions or other pleadings are allowed,[12] unlike the procedure in other civil actions.[13] "The prohibition of other pleadings clearly ha[s], as its purpose, an early joinder of issue and the elimination of the possibility of extended delay through the presentation of preliminary pleadings with resultant hearings and orders. One pleading to raise all objections and defenses to the taking and one hearing to dispose of them are contemplated. . . ."[14]

The amount to be paid, which generally does not impinge upon the public interest in a quick resolution of the government's right to condemn the land, is determined only in the second stage of the procedure. A separate trial is held to adjudicate the item of remuneration,[15] and a landowner "may present evidence as to the amount of the compensation to be paid for his property," regardless of "whether or not he has previously appeared or answered. . . ."[16] This is wholly unlike the procedure during the first stage, when all defenses and objections must be carefully preserved.

---

[12] "No other pleading or motion asserting any additional defense or objection shall be allowed." Fed. R. Civ. P. 71A(e).

[13] See Fed. R. Civ. P. 12.

[14] Atlantic Seaboard Corp. v. Van Sterkenburg, 318 F.2d 455, 458 (4th Cir. 1963).

[15] Fed. R. Civ. P. 71A(h). See United States v. 58.16 Acres of Land, 478 F.2d 1055, 1059 (7th Cir. 1973).

[16] Fed. R. Civ. P. 71A(e).

■ If defenses waived by a landowner through his failure to include them in the answer could be later raised by the trial court, the weighty policies represented in Rule 71A would be undermined. The procedures required by the rule were adopted after more extended deliberation than that given the other rules of civil procedure,[17] and they reflect the thoughtful judgment of the Advisory Committee regarding the most effective method of dealing with rather complex problems.[18] In view of these considerations, it was inappropriate, and, we now hold, incorrect for the trial court here to have raised a defense not claimed by the landowners in their answers.[19] The condemnations in this case therefore cannot be voided on the basis of a contention that they were not legislatively authorized.[20]

## C.

Since the nonconstitutional objection to the condemnation is not available to permit affirmance of the judgment of the district court, we move to the landowners' second

---

[17] "Rule 71A . . . received more attention from the Advisory Committee, and was drafted over a longer period, than any of the other Rules of Civil Procedure." C. Wright & A. Miller, supra note 11, § 3041, at 87.

[18] "Rule 71A is an attempt to clear up one of the most confused aspects of federal procedure." Id. 88 (footnote omitted).

[19] Had the defense not been waived, there may have been some question whether condemnation of parcels of land for the Cross-Island Highway was authorized. After the decision of the district court, however, Act No. 3800 became law. It provides:

Section 1. It is hereby affirmed that the construction of the four-lane controlled access highway from Mount Welcome intersection east of Christiansted to Frederiksted, St. Croix, is an authorized highway program of the Government of the Virgin Islands. The construction of this highway is required in the public interest of the Virgin Islands and the acquisition of land for this purpose is an authorized public use.

Section 2. Section 1 of this Act is declared to be consistent with the intent of the Legislature in appropriating funds for the matching of Federal funds for the construction of the Christiansted-Frederiksted highway, and is intended to remove any doubt that the Legislature has authorized the construction of this highway.

The Act would clearly appear to authorize the takings in question, cf. Bradley v. School Bd., 416 U.S. 696, 711–16 (1974).

[20] This is not to suggest that individuals whose property is not involved in the condemnation proceeding are estopped from asserting in a separate proceeding that the condemnation was not legislatively authorized.

argument, which is grounded upon the constitutional guarantee of due process of law.

■ It has long been the rule that the due process clause does not require that a landowner whose property is to be condemned be given a hearing in advance to determine whether the taking is necessary.[21] Recognizing that decisions of the Supreme Court had reached that result, the district court nonetheless held that when a hearing is to be conducted, notice of the hearing must be provided to the property holders whose land is in question. It reached this result because it viewed several recent Supreme Court decisions[22] as representing the current state of the law with regard to the requirements of notice and a hearing when a person's property is at stake. Thus, although the older decisions in the area of eminent domain have not been expressly overruled, the district court believed such to be the implicit result wrought by the more recent decisions.

Although it may be contended that there is considerable persuasiveness to the rationale utilized by the district court, we are foreclosed from adopting it. In its recent order in Joiner v. City of Dallas,[23] the Supreme Court reaffirmed that no hearing need be provided by the state prior to the condemnation of land.

The Joiner decision was a one-sentence order, without an accompanying opinion, affirming the judgment of a three-judge district court. The lower court had held that a landowner has no due process right to receive notice or a hearing on the question whether his land may be condemned.[24] That is the constitutional issue facing us today. By affirming the judgment, albeit without an opinion, the

---

[21] See, e.g., Bragg v. Weaver, 251 U.S. 57, 58–59 (1919).

[22] North Ga. Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601 (1975); Mitchell v. W. T. Grant Co., 416 U.S. 600 (1974); Fuentes v. Shevin, 407 U.S. 67 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337 (1969).

[23] 419 U.S. 1042, aff'g mem. 380 F.Supp. 754 (N.D. Tex. 1974) (per curiam) (three-judge court).

[24] 380 F.Supp. at 774.

Supreme Court ruled that notice and a hearing are not required in the type of situation now before us. We must follow that ruling.

■ The fact that the Supreme Court did not hand down an opinion explaining the basis for its order in Joiner does not reduce the precedential effect of the decision. Having been denied an injunction by a properly constituted three-judge court, the plaintiffs in *Joiner* had a right of appeal to the Supreme Court.[25] Once the case was within the appellate jurisdiction of the Supreme Court, the Court was required, as explained in its recent decision in Hicks v. Miranda,[26] to adjudicate the matter. The Court "[was] not obliged to grant the case plenary consideration, and [it] did not; but [the Court was] required to deal with its merits."[27] As stated some years earlier, "[v]otes to affirm summarily, . . . it hardly needs comment, are votes on the merits of a case. . . ."[28]

It cannot be supposed that the Supreme Court did not know that its Joiner decision rested upon a ruling that prior notice and a hearing are not required in condemnation cases. Not only was that issue the focus of the lower court's opinion,[29] but the question was squarely presented and argued in the appeal papers filed in the Supreme Court by the Joiner appellants.[30]

---

[25] 28 U.S.C. § 1253 (1970).

[26] 422 U.S. 332 (1975).

[27] Id. at 344.

[28] Ohio ex rel. Eaton v. Price, 360 U.S. 246, 247 (1959) (separate memorandum of Brennan, J.). Cf. Linehan v. Waterfront Comm'n, 347 U.S. 439 (1954) (Douglas, J., dissenting). Several months ago, we analyzed the effect of dismissals of appeals by the Supreme Court for want of a substantial federal question. Following the Hicks ruling then, as we do now, we gave binding precedential effect to such dismissals. Colorado Springs Amusements, Ltd. v. Rizzo, 524 F.2d 571, 575–76 (3d Cir. 1975), petition for cert. filed, 44 U.S.L.W. 3478 (U.S. Jan. 14, 1976) (No. 75-999).

[29] 380 F.Supp. at 769–74.

[30] Jurisdictional Statement at 3, 6, 20–22, Joiner v. City of Dallas, 419 U.S. 1042 (1974).

The Joiner ruling came down six weeks before the decision in North Ga. Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601 (1975), but we find nothing in the latter case that would affect the result reached in the former.

■ The holding of the district court whose judgment has been appealed to us, read narrowly, was that if the government decides to conduct a public hearing before condemning certain land, it must provide personal notice of the hearing to those owners whose property is a potential target of the planned taking.[31] That holding was thus in conflict with the ruling in Joiner that neither a hearing nor notice is required by the due process clause. As such, it cannot stand.

### D.

Paragraphs 1, 2, 3, and 4 of the judgment of the district court will accordingly be vacated, and the cause will be remanded with instructions to enter an order for surrender of possession of the property pursuant to 28 V.I.C. § 421(c).

The mandate shall issue forthwith.

---

[31] The government provided notice of the hearing by publication in a St. Croix newspaper. See note 4 supra. It was specified in the statement that appeared in the newspaper that a public hearing would be held at a particular time and place, and that discussion respecting the effects of the highway could be requested by interested persons, "[i]n accordance with the provisions of Title 23, U.S. Code, Section 128. . . ." The adequacy of that published notification of the hearing statutorily required by 23 U.S.C. § 128 was not before the district court, and is not before us today.